**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

**MARIA POWELL,** on behalf of herself and
all others similarly situated,                      **CLASS ACTION COMPLAINT**
                                                     **& DEMAND FOR JURY TRIAL**

                               **Plaintiff,**

                 **v.**

**CUROLOGY, INC.,**

                              **Defendant.**
-----------------------------------------------------------------------X

Plaintiff, Maria Powell ("Plaintiff" or "Ms. Powell"), individually and on behalf of all others

similarly situated, by and through undersigned counsel, Robert Schonfeld, Esq. of JOSEPH &

NORINSBERG, LLC, brings this action against **CUROLOGY, INC.** ("Defendant") for violations

of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York Civil

Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 et seq., and the New York City Human Rights

Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

### INTRODUCTION

1.      On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding

position that websites operated by places of public accommodation must be accessible to individuals

with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E.

Boyd stated: "The Department first articulated its interpretation that the ADA applies to public

accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate

that the goods, services, and privileges offered by such entities are equally accessible to all,

including those with disabilities.

2.      Plaintiff, MARIA POWELL, is a legally blind resident of Bronx County, New York.

As documented by Ralph Paternoster, O.D., of Park Professional Eyecare in Bronx, New York, Ms.

Powell is legally blind due to proliferative diabetic retinopathy, which has degraded her eyesight and caused severe and permanent damage to her vision. Her condition meets the criteria for legal blindness under both state and federal standards, and there are no available treatments capable of restoring her lost vision. (See Exhibit A.)

3. Ms. Powell is a proficient user of screen-reading software, including Job Access With Speech ("JAWS") and/or NonVisual Desktop Access ("NVDA"), which she relies on daily to navigate digital environments independently. Her reliance on keyboard-based navigation and screen-reading protocols enables her to engage with online retail platforms, product pages, shopping carts, account portals, and checkout processes without sighted assistance. Screen-reading software is indispensable to her autonomy and digital access. Due to the permanent nature of her condition, Ms. Powell will require assistive technology and digital accessibility accommodations for the remainder of her life.

4. This action arises from Defendant CUROLOGY, INC.'s failure to design, maintain, and operate its website, www.curology.com (the "Website"), in a manner accessible to blind and visually impaired individuals. The Website functions as an interactive retail platform and digital gateway for Defendant's skincare and personal-care business, through which Defendant markets and sells skincare regimens, cleansers, moisturizers, sunscreens, acne treatments, body-care products, and subscription-based services to consumers throughout the United States, including New York. Defendant's failure to ensure equal access to these services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5. On multiple occasions in March, April, and May 2026, Ms. Powell visited www.curology.com using screen-reading software with the genuine intent to shop for skincare products for her own use. Specifically, Ms. Powell sought to access and purchase Defendant's

Gentle Cleanser and Gel Moisturizer products, both of which are products commonly marketed as part of a skincare routine and are products a consumer would reasonably wish to review together when considering a facial-care regimen. Ms. Powell was drawn to Defendant's Website because Defendant prominently markets personalized skincare routines and related daily-use products directly through its Website, and because Plaintiff was interested in purchasing foundational skincare products that she could evaluate and order independently online.

6.      As a legally blind consumer, Ms. Powell depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require her to seek assistance from others in order to identify products, compare labels, and complete purchases. During her visits to the Website, on March 14, 2026, April 9, 2026, and May 21, 2026, respectively, Ms. Powell attempted to browse product offerings, review product descriptions, compare skincare products, navigate menus and categories, access specific product pages, identify pricing and subscription options, add items to her shopping cart, and proceed through the purchase flow. Because the Website contained numerous accessibility barriers—including inaccessible pages, missing or deficient alternative text, link text issues, repeated link text to different destinations, duplicate identifiers, improperly structured content, inaccessible navigation elements, and other barriers reflected in the SortSite scan—Ms. Powell was unable to meaningfully access the product information, compare the available items, or independently complete the intended purchases.

7.      These barriers are not isolated defects. The SortSite Accessibility Validation Report uploaded herewith states that the scan was stopped at 30 pages and nevertheless identified 22 accessibility issues on Defendant's Website. The report reflects multiple recurring barrier types across the scanned pages, including duplicate id attributes, image-related accessibility failures, link-text issues, and structural coding problems that impede reliable screen-reader navigation and

interpretation.  Exhibit B

8.    These barriers directly interfered with Plaintiff's ability to access the specific products she sought to review. Because the Website contained image-related accessibility defects and structurally inaccessible content, Ms. Powell could not independently understand product imagery, promotional content, or other visually presented product information relating to Gentle Cleanser and Gel Moisturizer. Because the Website also contained link-related and navigation-related accessibility barriers, Plaintiff could not reliably identify where certain links would lead, move efficiently among product categories and routine-building pages, or consistently access the specific product pages she wished to review. Because the Website contained coding defects such as duplicate identifiers and other markup problems, Plaintiff's screen reader could not reliably interpret page structure and interactive components needed to browse and purchase products.

9.    Defendant CUROLOGY, INC., upon information and belief, owns and operates www.curology.com, a nationwide e-commerce platform offering skincare products and related services to consumers across the United States, including New York. The Website is Defendant's principal and, upon information and belief, primary direct-to-consumer sales channel. Defendant markets its products and directs its sales activities to New York consumers through the Website, and the discriminatory conduct giving rise to this action occurred, in material part, within this District.

10.    Ms. Powell specifically sought out Defendant's Website because Defendant promotes branded skincare products, routines, and direct-to-consumer purchasing features that she wished to access independently. As a blind consumer, she depends on accessible digital interfaces to make informed purchasing decisions, review product details, compare skincare offerings, and complete transactions privately and independently. Defendant's failure to provide a WCAG-

compliant Website denied her equal access to the same services offered to sighted users.

11.     Ms. Powell remains highly motivated to return to www.curology.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, particularized, and ongoing: she still intends to purchase Gentle Cleanser and Gel Moisturizer through Defendant's Website. These products, together with Defendant's product descriptions, routine-building materials, and direct purchasing features, are not equally available to her through an accessible alternative channel that offers the same shopping experience. Without remediation of the barriers described herein, Ms. Powell will continue to be excluded from accessing Defendant's goods and services on equal terms with sighted consumers.

12.     Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA and under New York State and City law. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its Website into compliance with federal accessibility standards, together with damages, statutory relief, attorneys' fees, costs, and such other relief as set forth below.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*

14.     Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

15.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant CUROLOGY, INC. conducts substantial and continuous business in this District through its interactive Website, www.curology.com. Plaintiff accessed and attempted to use this Website from her residence in Bronx County, New York, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

16.     Upon information and belief, Defendant is organized outside New York but actively engages in commercial transactions with New York residents through its Website. These transactions include product selection, review of product details, account interaction, subscription selection, checkout, payment processing, and customer support. Defendant's digital infrastructure knowingly transmits data and files into New York, establishing purposeful availment under federal precedent. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

17.     Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

### **NATURE OF ACTION**

18.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District,

attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21.    Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22.    Plaintiff, MARIA POWELL, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the NYSHRL, NYCHRL, and NYCRL. To access the Internet, Plaintiff relies on screen-reading software such as JAWS and/or NVDA for Windows.

23.    For screen-reading software to function, website content must be capable of being

rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

24.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25.    Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context or repeating the same text for different destinations;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, duplicate identifiers, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Inaccessible navigation and structural coding defects that prevent a screen reader user from independently browsing products and completing a transaction.

## STATEMENT OF FACTS

26.    Plaintiff MARIA POWELL is a legally blind consumer residing in Bronx County, New York. She has been clinically evaluated and found to have proliferative diabetic retinopathy resulting in severe and permanent visual impairment. Ms. Powell's diagnosis and legal blindness status are documented by Ralph Paternoster, O.D., of Park Professional Eyecare, 1250 Pelham Parkway South, Bronx, New York 10461. (See Exhibit A.)

27.    As confirmed in the February 10, 2026 medical letter, Ms. Powell's condition has degraded her eyesight, caused severe and permanent damage to her vision, and is not presently

treatable in a manner that would restore lost sight. Ms. Powell accordingly requires accommodations afforded to legally blind persons under state and federal law.

28.    Ms. Powell relies on screen-reading software—including JAWS and/or NVDA—to navigate the Internet and complete online transactions independently. She uses keyboard-based navigation to browse, select items, and attempt purchases on retail websites. Without a properly coded, screen-reader-compatible website, Ms. Powell cannot independently access online shopping services on the same terms as sighted consumers.

29.    On March 14, 2026, Ms. Powell visited www.curology.com using screen-reading software with the genuine intent to purchase Defendant's Gentle Cleanser product for her own use and to review whether it would be appropriate as part of a facial-care routine. Ms. Powell selected Gentle Cleanser because cleansers are an entry-point skincare product and because Defendant markets skincare routines directly through its Website in a manner that invites consumers to browse and assemble coordinated products.

30.    While navigating the Website on March 14, 2026, Ms. Powell attempted to locate the Gentle Cleanser page through Defendant's menus and product-navigation structure, review the product description, identify its price and purchasing options, and add the product to her cart. At each step, she encountered disabling access barriers that prevented her from completing these tasks independently.

31.    Specifically, because the SortSite report identifies recurring image-related accessibility issues on Defendant's Website, Ms. Powell's screen reader could not reliably communicate the meaning of product images and other visually presented content associated with products she attempted to review, including Gentle Cleanser. As a result, Plaintiff could not independently understand all of the visual product depictions, promotional content, or other image-

based information used to market the product.

32.     Because the SortSite report also identifies link-text issues and repeated link text to different destinations, Plaintiff could not consistently determine which links on the Website would lead to the Gentle Cleanser page, to routine-builder content, or to other unrelated pages. For a screen reader user, such ambiguous or repetitive link text substantially impairs navigation because it deprives the user of the context needed to decide which link to activate.

33.     In addition, because the SortSite report reflects duplicate id attributes and structural coding defects, Plaintiff's screen-reading software could not reliably interpret page structure and navigation components on the Website. These defects interfered with Plaintiff's ability to move efficiently through menus, identify page regions, and navigate to product-specific information without confusion.

34.     On April 9, 2026, Ms. Powell returned to Defendant's Website to again attempt to purchase Gentle Cleanser and to see whether the access barriers she previously encountered had been corrected. During this second visit, she again attempted to locate the product, review its description and pricing, and proceed toward purchase. She encountered the same and similar barriers, including inaccessible image-based content, ambiguous or repeated links, and structurally inaccessible navigation, and again could not independently complete the transaction.

35.     On May 21, 2026, Ms. Powell returned to the Website for a third time, this time intending not only to reattempt access to Gentle Cleanser but also to review Defendant's Gel Moisturizer product. Plaintiff was interested in Gel Moisturizer because it is a complementary skincare product that a consumer would naturally evaluate together with a cleanser when assembling a basic skincare regimen.

36.     During this third visit, Plaintiff attempted to locate the Gel Moisturizer page,

compare it to other facial-care offerings, review product information, and evaluate whether it should be purchased together with Gentle Cleanser. However, the same categories of barriers reflected in the SortSite report again impeded her access. Because of the Website's inaccessible images and visually presented content, she could not fully access product-specific information communicated through product photography and promotional graphics. Because of the Website's link-text and navigation defects, she could not efficiently determine which links would take her to Gel Moisturizer or related product pages. Because of the Website's structural coding defects and duplicate identifiers, her screen reader could not reliably interpret the Website's page organization and interactive elements.

37.     The SortSite Accessibility Validation Report states that the scan stopped at 30 pages and nevertheless identified 22 accessibility issues on the Website. Those barriers were not isolated to a single momentary error, but were recurring coding defects appearing across numerous pages and categories of content.

38.     The report reflects barrier categories that are particularly disabling to blind and visually impaired users, including duplicate id attributes, image accessibility issues, and link-related defects. These are precisely the kinds of barriers that interfere with a screen reader user's ability to locate products, distinguish destinations, interpret content, and complete purchases independently.

39.     As a result of the foregoing accessibility barriers, Ms. Powell was denied full and equal access to Defendant's Website and was unable to independently complete the purchases she had specifically intended to make. She left the Website without completing her transactions and without any accessible means of obtaining an equivalent shopping experience.

40.     Ms. Powell is highly motivated to return to www.curology.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, ongoing,

and not speculative. She still intends to purchase Gentle Cleanser and Gel Moisturizer through Defendant's Website. As a legally blind consumer who relies on screen-reading software to navigate online retail platforms, Ms. Powell cannot complete these tasks on terms equal to those available to sighted consumers unless and until Defendant remediates the barriers identified herein.

41. Ms. Powell has a genuine, ongoing desire to shop on www.curology.com. Defendant's Website is the direct source of Defendant's branded products, associated product descriptions, routine-building tools, pricing, promotions, subscription options, and account-based retail features. The specific products Ms. Powell intends to purchase and evaluate—Gentle Cleanser and Gel Moisturizer—are of concrete interest to her, and she seeks access to the same product information and purchasing tools made available to sighted consumers.

42. Ms. Powell's intent to return to Defendant's Website specifically—rather than merely to browse the Internet generally—is grounded in concrete facts: she previously visited the Website on three separate dates; she sought to purchase specific identified products, Gentle Cleanser and Gel Moisturizer; she attempted to engage with specific commercial tasks including navigating to product pages, reviewing product information, identifying pricing, and proceeding toward checkout; and she remains interested in completing those transactions once the Website is accessible. This is not a vague desire to revisit an unidentified website someday, but a present and continuing plan to return to Defendant's Website for specific commercial purposes.

43. Ms. Powell has suffered a past injury—her inability to independently complete intended transactions and access specific, identified products due to documented accessibility barriers on www.curology.com—and faces a real and immediate threat of future harm given her specifically articulated intent to return to the Website once it is made accessible and the ongoing nature of the accessibility deficiencies documented in the SortSite report. Her injuries are directly

traceable to Defendant's failure to maintain an accessible website, and they are fully redressable through the injunctive and other relief requested herein. Accordingly, Ms. Powell has standing to bring this action under Title III of the ADA and the Second Circuit's controlling standing authority, including *Calcano*.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff MARIA POWELL brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals. The proposed Class is defined as follows:

All legally blind individuals in the United States who have attempted to access www.curology.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "Class").

45.    The proposed New York Subclass is defined as follows:

All legally blind individuals domiciled in the State of New York who have attempted to access www.curology.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York Subclass").

46.    The proposed New York City Subclass is defined as follows:

All legally blind individuals domiciled in New York City who have attempted to access www.curology.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York City Subclass").

47.    Numerosity is satisfied because the Class and Subclasses are so numerous that joinder of all members is impracticable. There are numerous blind and visually impaired individuals in the United States, New York State, and New York City who use screen-reading software to access

online commerce.

48.    Commonality is satisfied because common questions of law and fact apply to all members of the Class and Subclasses, including whether Defendant's Website contains access barriers, whether Defendant failed to implement reasonable accessibility measures, whether those barriers deny blind users full and equal access, and whether injunctive and other relief should issue.

49.    Typicality is satisfied because Plaintiff's claims are typical of the claims of the Class and Subclasses. Plaintiff, like the other members, is legally blind, relies on screen-reading software, attempted to access Defendant's Website, and encountered access barriers that denied her full and equal enjoyment of Defendant's goods and services.

50.    Adequacy is satisfied because Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel competent and experienced in disability rights and complex litigation.

51.    Class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive and corresponding declaratory relief appropriate respecting the Class and Subclasses as a whole.

## FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

52.    Plaintiff, MARIA POWELL, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases, or operates a place of public accommodation.

54.     Defendant's Website, www.curology.com, is offered to the general public as Defendant's principal direct-to-consumer retail channel. As such, it must be equally accessible to all potential consumers, including those who are blind or visually impaired.

55.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

56.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes, inter alia, a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

57.     Defendant has discriminated against Plaintiff and the Class by maintaining a Website that is inaccessible to blind and visually impaired individuals, by failing to remove access barriers, and by failing to make the accessibility features of the Website available to individuals who are sight-impaired and rely on screen-reading software.

58.     Plaintiff and the Class have been denied full and equal access to Defendant's Website and to the goods, services, privileges, and advantages offered thereon.

59.     Defendant's acts and omissions violate Title III of the ADA and the regulations

promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services inferior to those provided to non-disabled persons. Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

60.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests the relief set forth below.

## SECOND CAUSE OF ACTION
### (Violation of the New York State Human Rights Law)

61.    Plaintiff MARIA POWELL, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covered the actions of Defendant. Plaintiff, at all relevant times, as a result of her severe visual impairment and legal blindness, has a disability within the meaning of the NYSHRL.

63.    Defendant, at all relevant times, owns and operates a place of public accommodation—the Website, www.curology.com—within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of N.Y. Executive Law § 292(1).

64.    Plaintiff has visited the Website on multiple occasions and has encountered barriers to access on each occasion.

65.    Under N.Y. Executive Law § 296(2)(a), it is an unlawful discriminatory practice for

the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

66.     Discrimination under the NYSHRL includes the refusal to make reasonable modifications in policies, practices, or procedures, and the refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services.

67.     Defendant's actions violate the NYSHRL by owning and operating a Website that is inaccessible to blind and visually impaired individuals, by not removing access barriers to its Website, and by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

68.     Defendant has intentionally and/or willfully discriminated against Plaintiff and the New York Subclass in violation of the NYSHRL.

### THIRD CAUSE OF ACTION
### (Violation of the New York City Human Rights Law)

69.     Plaintiff MARIA POWELL, on behalf of herself and the Class and New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70.     At all times relevant herein, Defendant was subject to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* Plaintiff is a person with a disability within the meaning of N.Y.C. Admin. Code § 8-102.

71.     Defendant's Website constitutes a place or provider of public accommodation within

the meaning of N.Y.C. Admin. Code § 8-102 and § 8-107.

72.     The NYCHRL requires places of public accommodation to provide full and equal enjoyment to persons with disabilities and to make reasonable accommodations so that persons with disabilities may have access to goods and services on equal terms.

73.     Defendant discriminated against Plaintiff and the New York City Subclass by maintaining a Website that denies blind and visually impaired individuals equal access to Defendant's goods and services, and by failing to make reasonable accommodations and modifications necessary to render the Website accessible.

74.     Defendant's conduct constitutes an unlawful discriminatory practice in violation of the NYCHRL, entitling Plaintiff and the New York City Subclass to damages, injunctive relief, attorneys' fees, costs, and all other available relief.

## FOURTH CAUSE OF ACTION
### (Violation of New York Civil Rights Law § 40-c)

75.     Plaintiff MARIA POWELL, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.     New York Civil Rights Law § 40-c guarantees that no person shall, because of disability, be subjected to any discrimination in civil rights by any other person or by any firm, corporation, or institution.

77.     By maintaining a Website that is inaccessible to Plaintiff and other legally blind consumers and by denying them equal access to Defendant's goods and services, Defendant has discriminated against Plaintiff and the New York Subclass because of disability in violation of New York Civil Rights Law § 40-c.

78.     As a direct and proximate result of Defendant's conduct, Plaintiff and the New York Subclass have suffered injury and are entitled to all available relief.

## FIFTH CAUSE OF ACTION
### (Violation of New York Civil Rights Law § 40-d)

79.     Plaintiff MARIA POWELL, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.     New York Civil Rights Law § 40-d provides for penalties and remedies arising from violations of § 40-c.

81.     Defendant's discriminatory conduct, as described herein, violated New York Civil Rights Law § 40-c and thereby entitles Plaintiff and the New York Subclass to recover the statutory damages and penalties authorized by § 40-d, in addition to other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant the following relief:

A. Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint her counsel as Class Counsel;

B. Declare that Defendant's Website violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law;

C. Issue a permanent injunction requiring Defendant to make its Website readily accessible to and usable by blind and visually impaired individuals, including by bringing the Website into compliance with WCAG 2.1 Level AA or such other standard as the Court deems appropriate;

D. Order Defendant to ensure that all images, links, menus, navigation components, forms, labels, product pages, routine-building tools, and other interactive Website components are coded to be accessible to screen-reading software and keyboard navigation;

E. Order Defendant to implement and maintain policies, practices, procedures, employee training, accessibility testing, consultant oversight, periodic audits, and user feedback mechanisms sufficient to ensure ongoing accessibility of the Website;

F. Award Plaintiff, the Class, the New York Subclass, and the New York City Subclass all available statutory, compensatory, and/or actual damages to the fullest extent permitted by law;

G. Award civil penalties where authorized by law;

H. Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs; and

I. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2026
New York, New York

**JOSEPH & NORINSBERG, LLC**
By: */s/ Robert Schonfeld*
Robert L. Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
Tel: (212) 227-5700
Fax: (212) 656-1889
rschonfeld@employeejustice.com